UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| UNITED STATES, | CASE NO. CR02-443 MJP |
|---|---|
| Petitioner, | ORDER GRANTING MOTION FOR WRIT OF ERROR CORAM NOBIS |
| v. | |
| TUAN QUANG LE, | |
| Defendant. | |

This matter comes before the Court upon Defendant's Motion for Writ of Error *Coram Nobis*. (Dkt. No. 666.) Having read the Motion and supporting exhibits, and noting that the Government has not provided a response, the Court GRANTS the Motion, allows Mr. Le to withdraw his guilty plea, and VACATES his conviction (Dkt. No. 344).

**Background**

Defendant, Tuan Quang Le, was five years-old when his family fled post-war Vietnam as political refugees. (Dkt. No. 666-1, Ex. 1, Declaration of Tuan Quang Le ("Le Decl."), ¶ 1.) After enduring family separation when his father was caught, and after more than a year spent

interned in a refugee camp, Mr. Le' family was able to secure sponsorships and immigrate to the United States.  (Id., ¶ 1; id., Ex. 3, Declaration of Stephanie Le ("S. Le Decl."), ¶ 2.)  Mr. Le's family eventually settled in Seattle and he worked steadily throughout his teen years.  (Dkt. No. 666 at 3.)  But he also began to experiment with alcohol and developed a substance disorder that led to his involvement in this case.  In 2002 Mr. Le was charged with conspiracy to distribute marijuana in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(c).  As the United States' Attorney wrote in the Government's Sentencing Memorandum, Mr. Le's "main problem appears to be his own struggle with drug abuse . . . [but] this defendant has a lot of promise, and is regarded as an excellent employee by his current employer."  (Id.)  Mr. Le's attorney at the time, David Gehrke, negotiated a plea agreement that allowed Mr. Le to participate in drug treatment while in prison.  (Le Decl., ¶ 4.)  Mr. Le "was struggling with addiction, and [] desperately wanted to get help for it."  (Id.)

Before agreeing to the plea bargain, however, Mr. Le and his family asked Mr. Gehrke if the guilty plea would cause problems with his immigration status as a lawful permanent resident.  (Id. ¶ 5; Dkt. No. 666-1, Ex. 2, Declaration of David Gehrke ("Gehrke Decl."), ¶¶ 4-7.)  Mr. Gehrke assured Mr. Le and members of his family that pleading guilty would not affect his immigration status.  (Le Decl., ¶ 5; Gehrke Decl., ¶ 4; S. Le Decl., ¶ 4.)  Mr. Le would not have pled guilty if he had known it could lead to a deportation order.  (Le Decl., ¶ 11.)

Mr. Le was sentenced to 24 months in prison.  (Dkt. No. 666-1, Ex. 7.)  While in prison he completed the difficult Residential Drug Abuse Program ("RDAP") and expected to be released early, but instead learned that an immigration detainer had been lodged and the government was seeking to deport him.  He was transferred to the custody of Immigration and Customs Enforcement ("ICE") and was held in multiple Immigration and Naturalization Service

("INS") facilities, including a facility in Louisiana during Hurricane Katrina where he endured horrific conditions that led to his hospitalization. (Le Decl., ¶¶ 6-8.) Mr. Le was eventually released from immigration custody but continues to live under additional conditions established by the Department of Homeland Security ("DHS"), such as restrictions on travel and regular reporting to ICE officials. (Id., ¶ 9.) He lives in "constant fear that [he] will be deported" especially because he has two young children who are United States citizens and he dreads being separated from them. (Id.)

Mr. Le sought relief from deportation for many years. (Id., ¶ 10.) He worked to earn money for legal help, consulted several attorneys who would not help, and at one point was defrauded of $10,000 by an individual who promised to regain his legal status. (Id.) He tried many times to reach Mr. Gehrke to obtain his records, without success. (Id.) Mr. Le now owns a successful sign-making business and was finally able to hire his present counsel to locate Mr. Gehrke—who retired and is living abroad—in order to obtain the legal information and files necessary to review his case. (Id.)

Mr. Le now requests *coram nobis* relief, seeking to withdraw his plea and asking the Court to vacate his conviction. (Dkt. No. 666.) The Government has not contested Mr. Le's Motion.

### Discussion

A writ of error *coram nobis* "provides a remedy for those suffering from lingering collateral consequences of an unconstitutional or unlawful conviction based on errors of fact and egregious legal errors." United States v. Walgren, 885 F.2d 1417, 1420 (9th Cir. 1989) (internal quotation marks omitted); see also Telink, Inc. v. United States, 24 F.3d 42, 45 (9th Cir. 1994). To qualify for *coram nobis* relief, a petitioner must establish that "(1) a more usual remedy is not

available; (2) valid reasons exist for not attacking the conviction earlier; (3) adverse consequences exist from the conviction sufficient to satisfy the case or controversy requirement of Article III; and (4) the error is of the most fundamental character." United States v. Chan, 792 F.3d 1151, 1153 (9th Cir. 2015). The petitioner bears the burden of proving each requirement. See United States v. Garcia, No. CR 99-0699-RSWL-3, 2017 WL 3669542, at *1 (C.D. Cal. Aug. 24, 2017).

Mr. Le has established each of the requirements for *coram nobis* relief. He "satisfied the first requirement, that 'a more usual remedy is not available' to him, by establishing that he is not in custody and, as a result, not eligible for habeas relief or § 2255 relief." United States v. Kwan, 407 F.3d 1005, 1012 (9th Cir. 2005), opinion amended on reh'g, No. 03-50315, 2005 WL 1692492 (9th Cir. July 21, 2005), and abrogated on other grounds by Padilla v. Kentucky, 559 U.S. 356 (2010). Mr. Le also showed great diligence in attempting to challenge his conviction, but lacked the resources to hire counsel, and could not locate his original counsel, Mr. Gehrke, who retired and moved abroad. (Le Decl., ¶ 10.) He was therefore unable to attack his conviction earlier. And Mr. Le remains under threat of deportation, satisfying the case or controversy requirement of Article III. (Dkt. No. 666 at 6.)

Finally, Mr. Le has demonstrated the error that led to his conviction "is of the most fundamental character." The Ninth Circuit has determined that "affirmative misrepresentations by defense counsel regarding immigration consequences"—such as Mr. Gehrke's misrepresentation here—constitute constitutionally ineffective assistance of counsel under Strickland v. Washington, 466 U.S. 668 (1984). Chan, 792 F.3d at 1158. The Court therefore finds that Mr. Le qualifies for *coram nobis* relief and such relief is necessary to correct the injustice Mr. Le has faced as a result of his previous counsel's misrepresentations.

## Conclusion

Defendant's Motion for Writ of Error *Coram Nobis* (Dkt. No. 666) is GRANTED, his sentence is VACATED, and he may withdraw his guilty plea.


The clerk is ordered to provide copies of this order to all counsel.

Dated April 29, 2021.


Marsha J. Pechman
United States Senior District Judge